## AMOS PALMATEER et al.

### *v.*

### JOHN P. L. TILTON, admr., et al.

On a bill by the alleged vendee against an administrator *cum testamento annexo*, for the specific performance of a contract for the sale of lands alleged to have been made by the executor, who had a testamentary power of sale, the vendee is incompetent to prove the contract.

---

Bill for specific performance. On final hearing on pleadings and proofs.

*Mr. C. Robbins*, for complainants.

*Mr. W. H. Vredenburgh*, for defendant Tilton, administrator.

THE CHANCELLOR.

This suit is for the specific performance of an agreement for sale of land. It is brought against the administrator *de bonis*

*non* with the will annexed of William A. Harvey, deceased, late of Monmouth county, the devisees under the will, and the husbands of such of them as are married women, and the holder of a mortgage given by Mr. Harvey and his wife on the premises and other land. The property in question is a small piece of land in what was called Central Park, a tract lying between Key East and Ocean Grove, near the sea-shore, in Monmouth county. It is wholly unimproved, and lies back from the shore. It contains eighty-six hundredths of an acre. Mr. Harvey owned it at the time of his death. By his will he gave his wife all the residue of his real estate after payment of his debts, and so much of his personal property as she might choose to take, and fully authorized and empowered her to sell and convey (but only for her support) the whole or any part of his estate, real or personal. And he ordered his executor to sell all his personal property not taken by his wife, as soon as convenient after his death, and so much of his real estate as would be necessary to pay his debts and funeral expenses; and provided that such sale of his real property should be either public or private, as the executor should think best, and on such terms and conditions, and in such quantities as he should think and adjudge to be for the interest of all persons interested in the estate. And he further provided that the surplus of the proceeds, after payment of his debts and funeral expenses, and the cost and charges of selling and of settling up his estate, should be paid over to his wife. He appointed Abner Allen his executor, who proved the will May 24th, 1875. The complainants allege that on the 5th of March, 1881, Mr. Allen sold to them the land in question for the price of $500, then agreed upon between him and them, of which they then paid to him $25, and were to pay the balance within a year from that time, and that the deed was to be delivered on the payment of that balance. Mr. Allen died May 6th, 1881, and the defendant, John P. L. Tilton, was appointed administrator *de bonis non cum testamento annexo* on February 27th, 1882. Amos Palmateer, one of the complainants, swears that he made the purchase of the property for himself and his brother John, and he details the circumstances. He says that

when he paid the $25 he took a receipt from Mr. Allen, drawn by the latter, and signed by him as executor of Mr. Harvey; that the receipt (which he says is lost) was as follows:

"Received March 5th, 1881, from Amos Palmateer and John Palmateer, $25 on account of land south of toll-gate, of the estate of William Harvey, deceased, commencing at an iron plug on the east side of the railroad; thence running northeasterly until it strikes the centre of Evergreen avenue; thence running east along the centre line of Evergreen avenue until it strikes the centre of the turnpike; thence southerly as many feet as it is from the iron plug to the centre of Evergreen avenue, north; and the balance, $475, to be paid within the year, and the deed to be given when paid."

The Palmateers owned a triangular piece of land on the corner of Evergreen avenue (on the north) and the New York and Long Branch railroad (on the west), between the latter and the turnpike (on the east), which is parallel to the railroad, or nearly so, and they were desirous of buying of the estate of Harvey enough land adjoining between it and the turnpike road to make, in connection with their plot, a plot extending along Evergreen avenue from the railroad to the turnpike of the same depth on the turnpike as that which the triangular plot had on the railroad. The description in the receipt is of such a piece, but it does not, in the language of the surveyors, close; the last line is wanting. If the agreement were established, the description, especially in connection with the evidence outside of the alleged contents of the receipt, would be sufficient to identify the property. But the proof of the contract is not sufficient. The receipt is not produced. Amos Palmateer says it is lost. The evidence of the loss itself is not altogether satisfactory. He says he does not know where it is, nor how it got lost—not positively —but he has his ideas as to how it got out (of the safe). He does not, however, state what his theory is on that subject. But if it were conceded that the loss is sufficiently proved, the secondary evidence offered to establish the receipt is not sufficient for the purpose. The principal evidence on that head is the testimony of Amos Palmateer. He testifies to the giving of the receipt, and to its contents, but he is not a competent wit-

ness.    While the supplement of 1880 (*P. L. of 1880 p. 52*) to the act concerning evidence provides that—

"In all civil actions in any court of law or equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding, any party thereto may sue or be sued in a representative capacity,"

It also provides that the supplement shall not extend so as to permit testimony to be given as to any transaction with, or statement by, any testator or intestate represented in such action. It is true the testimony under consideration is not strictly within the language of the act, for Mr. Allen was not the testator, but it is within its spirit and meaning.

In *Colfax* v. *Colfax, 5 Stew. Eq. 206,* the prohibition was held to apply to a case where heirs-at-law were sued for specific performance, and it was there said that the proviso was intended to protect the estates of deceased persons against the substantiation of claims by the oaths of parties prosecuting or defending suits directly affecting the estate.   Also, that the object of the legislature, in making the proviso, was to guard against the injustice which would arise from a want of mutuality in the exercise of the right to testify in one's own behalf.   While in this case Mr. Allen was not, as before remarked, the testator, he was his representative, clothed with power to dispose of his estate.   Many of the evils to be apprehended from permitting one who presents a claim against the estate of a decedent to substantiate it by his own testimony, as to the statements of, or his transactions with, the deceased, are to be apprehended from permitting one who makes a claim to that estate, based on the agreement of the deceased executor, to testify in his own behalf to the statements of, or his transactions with, the executor in the matter.   It must be held that the prohibition extends to such cases.   The contrary construction would leave an estate which has been in the hands of a trustee who has died, subject to be charged by false allegations of contracts of sale, or other disposition or encumbrance, to the disadvantage of those interested therein, upon the mere oath of the claimant, which there would be no means of controverting,.

because of the death of the trustee. Striking out of the record the testimony of Amos Palmateer on the subject of the agreement, there is no proof to sustain it. George C. Allen, son of the executor, indeed, swears that his father sold a piece of land of the Harvey estate, on the west side of the turnpike, to Amos Palmateer; that the latter then paid to his father money—$25— on account of the purchase, and that his father gave Palmateer something in the way of a writing, but he does not know what the paper was. He says his father wrote the paper, and that it took him only about two or three minutes to do it. Ezekiel C. Allen, another son, who was present, testifies to the fact that Amos Palmateer on that occasion came to see his father to purchase land of the estate of Harvey, and he says he supposes and has no doubt it was land on the west side of the turnpike, but he knows nothing of the payment of any money, or the giving of any receipt or paper by his father. It should be stated that Amos Palmateer testifies that on that occasion he bought from Mr. Allen five lots of the estate, on the east side of the turnpike, for $100, and paid $25 on account of the purchase-money, and took a receipt therefor drawn and signed by Mr. Allen, which he produces. George C. Allen speaks of only one sale, and of the payment of only one sum of money, and of the giving of but one paper. The receipt for the five lots consists of but seven lines, and may well have been the paper which George says his father wrote in two or three minutes. It is not at all probable that Mr. Allen could have written the receipt which Amos Palmateer swears he gave him for the land on the west side of the turnpike, in two or three minutes, or any such very short time. According to Amos Palmateer's testimony, it contained a carefully worded description of the land, or, at least, of the lines constituting three sides of it, and it must have been twice as long as the receipt just spoken of. Here it may be remarked that the receipt for the land on the east side is for $25, and provides for the payment of the balance of the purchase-money in one year, and for the delivery of the deed on the payment thereof. A few words may be said in regard to the testimony of George C. Allen as to the land which was sold by his father, as executor, to Amos

Palmateer.   He says it was on the west side of the turnpike, but he only knows of one sale, and there was a sale of land on the east side made at that time on which, as before stated, $25 were paid and a receipt given.   It is quite possible that that is the transaction of which he speaks, and that he is in error as to the location of the land.   John Palmateer, one of the complainants, testifies that the same evening in which Amos went to Mr. Allen's to buy the lot (on the west side of the turnpike), Amos showed him a receipt for $25 paid on account of the purchase-money of that land.   He says he cannot remember how the receipt read, nor what it contained, but he remembers that it was for $25, and that they were to have the deed inside of a year.   He further says that he never saw the receipt after that night.   He does not say and it does not appear that he knew the handwriting of Allen. Nor does he say in whose handwriting the receipt was, nor that it purported to be signed by Allen.   It may be added that he is incompetent as a witness, for the reason before stated in connection with Amos's testimony.   William C. Kelly, the brother-in-law of the complainants, also testifies to the receipt.   He says he saw it two or three days after the purchase was made; that it was on a piece of paper about three inches wide and seven or eight long; that Amos Palmateer handed it to him and he, Kelly, remarked " It is the old Quaker's [meaning Mr. Allen's] writing," and Amos said that he, Amos, wrote it himself, and that Allen called up his sons and daughters to witness the transaction. This paper was not the one of which Amos speaks, for Amos swears that Allen wrote and signed that receipt, while the receipt which Kelly saw and read was written by Amos, as the latter himself told him.   Kelly testifies that he does not know Allen's signature; that he never saw it, except on that occasion.   The proof of the contract is insufficient.   There is, in fact, no competent evidence of it at all.   The bill will be dismissed, with costs.